IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>SEVER WALKER PADGITT LLP f/k/a SEVER STOREY, LLP; HUNTINGTON BANCSHARES, INC., AND L&Q REALTY, LLC<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No.: 24-CV-2052<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION**

Plaintiff Pennsylvania Manufacturers' Association Insurance Company ("PMA"), by and through its counsel, and for its Complaint for Declaratory Judgment and Rescission against Sever Walker Padgitt LLP, formerly known as Sever Storey, LLP (the "Firm"), Huntington Bancshares, Inc. ("Huntington"), and L&Q Realty, LLC ("L&Q"), alleges as follows:

**NATURE OF THE ACTION**

1. PMA seeks a declaration of its rights, duties, and liabilities under a Lawyers Professional Liability Policy that PMA issued to the Firm, policy number PL IN 000519 0 24 01, for the policy period February 1, 2024 to February 1, 2025 (the "Policy").

2. PMA seeks a declaration that it has no obligation to defend or indemnify the Firm or its attorneys in connection with claims asserted against them by Huntington and L&Q with respect to alleged misappropriation of settlement funds owed to Huntington and L&Q.

3. In the alternative, PMA seeks a declaration that the Policy is rescinded, and void *ab initio*, on the basis that the Firm made material misrepresentations in the insurance application submitted to PMA, on which PMA relied in issuing the Policy.

## THE PARTIES

4. Plaintiff PMA is a Pennsylvania corporation with its principal place of business in Pennsylvania. PMA is engaged in the business of underwriting and selling insurance and is authorized to transact business in Indiana.

5. Upon information and belief, the Firm is an Indiana limited liability partnership with its principal place of business in Carmel, Indiana.

6. Upon information and belief, Huntington is a Maryland corporation with its principal place of business in Columbus, Ohio. Upon information and belief, Huntington is in the mortgage business and is authorized to transact business in Indiana. PMA seeks no relief from Huntington but has named Huntington as a necessary party to this coverage dispute.

7. Upon information and belief, L&Q is an Indiana limited liability company with its principal place of business in Anderson, Indiana. PMA seeks no relief from L&Q but has named L&Q as a necessary party to this coverage dispute.

## JURISDICTION AND VENUE

8. This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and seeks declaratory relief.

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

10. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(1) because the Southern District of Indiana is the judicial district in which Defendants reside or resided during their lifetime.

11. Venue is also proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because the Southern District of Indiana is the judicial district in which a substantial part of the acts and omissions giving rise to the underlying claims occurred.

## FACTUAL BACKGROUND

### A. The L&Q Demand

12. On or about September 10, 2024, L&Q filed a Verified Notice of Claim (the "L&Q Notice") with the Superior Court of Hamilton County, Indiana, in the matter concerning the Unsupervised Estate of Tonny Storey (the "Storey Estate"). A copy of the L&Q Notice is attached as Exhibit A.

13. The L&Q Notice alleges that Tonny Storey ("Storey"), now deceased, was an attorney for the Firm and represented L&Q in an eminent domain lawsuit in the Superior Court of Marion County, Indiana, Case No. 49D03-2007-PL-023000, styled *State of Indiana v. L&Q Realty, LLC, et al.* (the "L&Q Condemnation Suit"). Ex. A, ¶ 1.

14. The L&Q Notice alleges that the State of Indiana (the "State") filed the L&Q Condemnation Suit on July 13, 2020, for the purpose of condemning certain property owned by L&Q. *Id*. at ¶ 2.

15. The L&Q Notice alleges that on August 10, 2020, Storey and his partner at the Firm, Philip D. Sever ("Sever"), filed their appearance on behalf of L&Q in the L&Q Condemnation Suit. *Id*. at ¶ 3.

16. The L&Q Notice alleges that on January 5, 2021, the court-appointed appraisers in the L&Q Condemnation Suit filed their Report of Appraisers valuing the total just compensation owed by the State as $1,420,000, which the State subsequently deposited with the Clerk of the Court (the "L&Q Deposit"). *Id*. at ¶ 4.

17. The L&Q Notice alleges that on March 4, 2021, Storey, on behalf of L&Q, filed a petition to withdraw the L&Q Deposit from the Clerk of the Court. *Id*. at ¶ 5.

18. The L&Q Notice alleges that Storey, Sever, and the Firm never informed L&Q that they had filed the petition to withdraw the L&Q Deposit. *Id*. at ¶ 6.

19. The L&Q Notice alleges that the court in the L&Q Condemnation Suit granted the petition on March 25, 2021, and ordered the Marion County Clerk to make a payment of $1,420,000, as well as any accrued interest, to the Firm's client trust account (the "IOLTA Account"). *Id*. at ¶ 7.

20. The L&Q Notice alleges that Storey, Sever, and the Firm never informed L&Q that the court granted the petition to withdraw the L&Q Deposit or that the Clerk of the Court had mailed payment to the Firm. *Id*. at ¶ 8.

21. The L&Q Notice alleges that, despite receiving the money from the Clerk, Storey, Sever, the Firm never paid any of the L&Q Deposit or accrued interest to L&Q. *Id*. at ¶ 9.

22. The L&Q Notice alleges that, on August 30, 2024, Sever filed a claim against the Storey Estate, stating that "[a]bout a week after Tonny Storey died on May 21, 2024, Philip Sever was able to get online access to [Firm] bank accounts. A [Firm] employee performed an initial review of those [Firm] bank accounts. It was discovered that Tonny Storey had taken money from the [Firm] bank accounts without authorization." *Id*. at ¶ 12.

23. The L&Q Notice alleges that the Storey Estate, Sever, and the Firm owe L&Q the amount of the L&Q deposit, $1,420,000, plus interest accrued thereon since March 25, 2021, as well as attorney fees. *Id*. at ¶ 10.

24. L&Q demanded payment from the Firm of the $1,420,000 it claims it is owed (the "L&Q Demand").

25. Sever and the Firm requested that PMA provide a defense and indemnity under the Policy for the L&Q Demand.

26. On September 19, 2024, PMA timely disclaimed coverage under the Policy for the L&Q Demand.

**B.    The Huntington Demand**

27. Upon information and belief, the Firm represented Huntington in an eminent domain lawsuit in the Probate Division of the Court of Common Pleas for Summit County, Ohio, Case No. 2021-cv-00140, styled *City of Green v. Huntington Bancshares Incorporated and Kristen M. Scalise, Summit County Fiscal Officer* (the "Huntington Condemnation Suit").

28. Upon information and belief, the City of Green, Ohio filed the Huntington Condemnation Suit on October 14, 2021, for the purpose of condemning certain property owned by Huntington.

29. On or about September 10, 2024, Huntington filed a Claim in the Storey Estate (the "Huntington Claim"). A copy of the Huntington Claim is attached as Exhibit B.

30. The Huntington Claim alleges that Huntington hired the Firm in May 2021 to serve as its legal counsel in a dispute, and Storey acted as the primary lawyer. Ex. B, ¶¶ 1-2.

31. Upon information and belief, the dispute referenced in the Huntington Claim is the dispute forming the basis of the Huntington Condemnation Suit.

32. The Huntington Claim alleges that the dispute was resolved at the end of 2023 and, after associated fees were paid to the Firm, Huntington was entitled to receive a net payment of $305,981.93. *Id.* at ¶ 3.

33. The Huntington Claim alleges that Storey issued a check to Huntington on January 18, 2024 (the "Huntington Check"). *Id.* at ¶ 4.

34. According to Exhibit A to the Huntington Claim, the Huntington Check was issued from the IOLTA Account in the amount of $305,981.93. *Id.* at Ex. A.

35. The Huntington Claim alleges that Storey died on May 21, 2024. *Id.* at ¶ 5.

36. The Huntington Claim alleges that on June 12, 2024, a representative from the Firm contacted Huntington because the Huntington Check had not been deposited. *Id.* at ¶ 6.

37. The Huntington Claim alleges that, on August 14, 2024, Huntington followed up with the Firm and stated that the Huntington Check would be deposited that day. *Id.* at ¶ 7.

38. The Huntington Claim alleges that a few hours after the call, the Firm's legal counsel advised Huntington that a stop payment had been placed on the Huntington Check. *Id.* at ¶ 8.

39. The Huntington Claim alleges that when Huntington contacted the Firm, it was informed that, prior to his death, Storey had "illegally and fraudulently transferred money from [the IOLTA Account], moved it into the [F]irm's operating account, and then illegally diverted the funds to himself." *Id.* at ¶ 9.

40. The Huntington Claim alleges that Huntington is entitled to the principal amount of the Huntington Check ($305,981.93), and 18% interest on the amount of the Huntington Check from the date of its execution until payment is made in full, as well as reasonable attorney fees and expenses (the "Huntington Demand"). *Id.* at ¶ 10.

41. Sever and the Firm have requested that PMA provide a defense and indemnity under the Policy for the Huntington Demand.

42. On September 19, 2024, PMA timely disclaimed coverage under the Policy for the Huntington Demand.

**C.   The Application**

43. On or about December 11, 2023, Storey, on behalf of the Firm, signed and submitted a bridge application that resulted in the issuance of the Policy (the "Application"). A copy of the Application is attached as Exhibit C.

44. In the Application, Storey, on behalf of the Firm, answered "no" to the question: "After inquiry of all law firm members is any attorney in the firm aware of…an actual or alleged act, omission, circumstance, or breach of duty that would reasonably be expected to result in a claim being made against the firm, any predecessor law firm, or against any attorney currently or formerly affiliated with the firm or any predecessor law firm, regardless of whether any such claim would be meritorious?" Ex. C.

**D.   The Policy**

45. PMA issued the Policy to the Firm for the policy period February 1, 2024 to February 1, 2025. A copy of the Policy is attached as Exhibit D.

46. The Policy contains the following Insuring Agreement:

> **A. Coverage**
>
> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **Policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:
>
> 1. no **Insured** gave notice to a **prior insurer** of such **claim** or a **related claim**;

7

    2. no **Insured** gave notice to a **prior insurer** of any such act or omission or **related act or omission**;

    3. prior to the date an **Insured** first became an **Insured** under this Policy or became an Insured under the first Policy issued by the **Company** to the **Named Insured** or any **predecessor firm**, whichever is earlier, of which this Policy is a renewal or replacement, no such **Insured** knew or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be expected to be the basis of such **claim**.

Ex. D.

47. The Policy contains the following definitions, in relevant part:

**Claim** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, **privacy injury and identity theft**, or **advertising injury** in the rendering of or failure to render **legal services**.

    \*    \*    \*

**Damages** mean judgments, awards or settlements provided any settlement is negotiated with the assistance and approval of the **Company**. **Damages** do not include:

    \*    \*    \*

    4. matters deemed uninsurable…

    \*    \*    \*

**Legal services** mean:

    1. those services, including eleemosynary (pro bono) services, performed by an **Insured** for others as a lawyer, arbitrator, mediator or other neutral fact finder, registered agent, title agent or notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy…

*Id*.

48. The Policy contains the following condition:

  F. Entire Contact

  By acceptance of this Policy the **Insured** agrees that:

1. all the information and statements provided to the **Company** by the **Insured**, including but not limited to those contained in the application, are true, accurate and complete and shall be deemed to constitute material representations made by all **Insureds**;

2. this Policy is issued in reliance upon the **Insured's** representations;

3. this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4. the **Company** shall have the right to cancel the Policy for misrepresentation of any material information provided by the **Insured** or **Insured's** agent when the misrepresentation becomes known to the **Company**.

*Id*.

### COUNT I – DECLARATORY JUDGMENT
### (No Duty to Defend or Indemnify the L&Q Demand)

49. PMA re-alleges and incorporates each of the allegations contains in paragraphs 1 through 48 as if fully set forth herein.

50. The Policy's Insuring Agreement applies only to Claims for Damages by reason of an act or omission in the performance of Legal Services by the Insured or by any person for whom the Insured is legally liable. Ex. D.

51. The Policy defines Legal Services as those services performed by an Insured for others as a lawyer. *Id*.

52. The L&Q Notice alleges that Storey, without authorization, withdrew the L&Q Deposit from the Clerk of the Court and never paid any of the L&Q Deposit or any accrued interest to L&Q. Ex. A, ¶¶ 5-9.

53. The L&Q Notice further alleges that Sever, a partner at the Firm, acknowledged that Storey had taken client funds from Firm bank accounts without authorization. *Id*. at ¶ 12.

54. The misappropriation of client funds does not constitute Legal Services and, therefore, PMA has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand.

55. The Policy's definition of Damages excludes matters deemed uninsurable. Ex. D.

56. The L&Q Demand seeks payment from the Firm of funds allegedly owed to L&Q which were misappropriated by Storey. Ex. A at ¶¶ 22-24.

57. Restitution does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand.

58. Disgorgement does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand.

59. The return of ill-gotten gains does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand.

60. The Policy's Insuring Agreement states that coverage may only be implicated to the extent that, prior to the date an Insured first became an Insured under the Policy, no such

Insured knew or could reasonably have foreseen that any such act or omission, or Related Act or Omission, might be expected to be the basis of such Claim. Ex. D.

61. The L&Q Notice alleges that Storey filed a petition to withdraw the L&Q Deposit without L&Q's knowledge on March 4, 2021, and that the court granted the petition and ordered the clerk of the court to make a payment of $1,420,000, as well as any accrued interest, to the IOLTA Account. *Id.* at ¶¶ 5-7.

62. The Policy did not incept until February 1, 2024, and was the first policy issued to the Firm by PMA.

63. Storey knew, or reasonably could have foreseen prior to the inception of the Policy, that the withdrawal of client funds without L&Q's knowledge or consent might be expected to be the basis of a Claim and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand.

WHEREFORE, Plaintiff Pennsylvania Manufacturers' Association Insurance Company requests that this Court enter judgment in its favor and against Defendants:

    A. Declaring that PMA has no duty to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand; and

    B. Awarding such other and further relief as the Court finds just and proper.

## COUNT II – DECLARATORY JUDGMENT
### (No Duty to Defend or Indemnify the Huntington Demand)

64. PMA re-alleges and incorporates each of the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. The Policy's Insuring Agreement applies only to Claims for Damages by reason of an act or omission in the performance of Legal Services by the Insured or by any person for whom the Insured is legally liable. Ex. D

11

66. The Policy defines Legal Services as those services performed by an Insured for others as a lawyer. *Id*.

67. Huntington contends it is entitled to the principal amount of the Huntington Check ($305,981.93), and 18% interest on the amount of the Huntington Check from the date of its execution until payment is made in full, as well as reasonable attorney fees and expenses. Ex. B at ¶ 10.

68. The Huntington Claim alleges that the Firm informed Huntington that, prior to his death, Storey had "illegally and fraudulently transferred money from [the IOLTA Account], moved it into the [F]irm's operating account, and then illegally diverted the funds to himself." *Id*. at ¶ 9.

69. The misappropriation of client funds does not constitute Legal Services and, therefore, PMA has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand.

70. The Policy's definition of Damages excludes matters deemed uninsurable. Ex. D.

71. The Huntington Demand seeks payment from the Firm of funds allegedly owed to Huntington which were misappropriated by Storey. Ex. B at ¶¶ 37-38.

72. Restitution does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand.

73. Disgorgement does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand.

74. The return of ill-gotten gains does not constitute an insurable loss and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand.

75. The Policy's Insuring Agreement states that coverage may only be implicated to the extent that, prior to the date an Insured first became an Insured under the Policy, no such Insured knew or could reasonably have foreseen that any such act or omission, or Related Act or Omission, might be expected to be the basis of such Claim. Ex. D.

76. The Huntington Claim alleges that the Huntington Condemnation Suit was resolved at the end of 2023, and Storey issued the Huntington Check on January 18, 2024. *Id*. at ¶¶ 3-4.

77. The Huntington Claim alleges that a stop payment was placed on the Huntington Check due to Storey's misappropriation of funds in the IOLTA Account. *Id*. at ¶¶ 36-37.

78. The Policy did not incept until February 1, 2024, and was the first policy issued to the Firm by PMA.

79. Storey knew, or reasonably could have foreseen prior to the inception of the Policy, that the misappropriation of client funds without Huntington's knowledge or consent might be expected to be the basis of a Claim and PMA, therefore, has no obligation to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand.

WHEREFORE, Plaintiff Pennsylvania Manufacturers' Association Insurance Company requests that this Court enter judgment in its favor and against Defendants:

A. Declaring that PMA has no duty to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the Huntington Demand; and

B. Awarding such other and further relief as the Court finds just and proper.

**COUNT III – RESCISSION**
**(In the Alternative)**

13

80. PMA re-alleges and incorporates each of the allegations contains in paragraphs 1 through 79 as if fully set forth herein.

81. On or about December 11, 2023, Storey, on behalf of the Firm, signed and submitted the Application, which resulted in the issuance of the Policy. Ex. C.

82. In the Application, Mr. Storey answered "no" to the question: "After inquiry of all law firm members is any attorney in the firm aware of…an actual or alleged act, omission, circumstance, or breach of duty that would reasonably be expected to result in a claim being made against the firm, any predecessor law firm, or against any attorney currently or formerly affiliated with the firm or any predecessor law firm, regardless of whether any such claim would be meritorious?" *Id*.

83. As evidenced by the L&Q Notice, the L&Q Demand, the Huntington Claim, and the Huntington Demand, Storey submitted the Application on behalf of the Firm, with the knowledge that he had misappropriated client funds from the IOLTA Account.

84. Notwithstanding this knowledge, Storey affirmed that no member of the Firm was aware of any incident, facts, circumstances, acts or omissions that could result in a claim against the Firm.

85. PMA relied on the Firm's representations in the Application when it issued the Policy to the Firm.

86. Had the Firm provided truthful answers to the Application questions, PMA would not have issued the Policy with the same terms, conditions, and premium.

87. As a result of PMA's reliance on the representations made by the Firm, the issuance of the Policy was based upon material misrepresentations.

88. The material misrepresentations and/or concealments made in the Application render the Policy void *ab initio*.

WHEREFORE, Plaintiff Pennsylvania Manufacturers' Association Insurance Company requests that this Court enter judgment in its favor and against Defendants:

A. Declaring that Lawyers Professional Liability Policy number PL IN 000519 0 24 01, issued by PMA to the Firm for the policy period February 1, 2024 to February 1, 2025, is rescinded and void *ab initio*;

B. Declaring that, because the Policy is void *ab initio*, PMA has no duty to defend or indemnify the Firm, Sever, or any other Insured under the Policy with respect to the L&Q Demand or the Huntington Demand; and

C. Awarding such other and further relief as the Court finds just and proper.

Dated: November 19, 2024

                                      Respectfully Submitted,

                                      Pennsylvania Manufacturers' Association Insurance Company

                                      By: */s/ Samuel R. Stalker*
                                              One of its Attorneys

Samuel R. Stalker (6300938)
Kennedys CMK LLP
30 S. Wacker Dr., Ste. 3650
Chicago, IL 60606
Telephone: (312) 800-5011
sam.stalker@kennedyslaw.com